In re: )
    Cosetta Johnson Foster )   Case Number: 16-70058-JHH
)
)
    Debtor(s) )   Chapter 13

## MOTION TO APPROVE LOAN MODIFICATION AGREEMENT
## ON THE DEBTOR'S RESIDENTIAL REAL PROPERTY

    COMES NOW the Debtor, in the above styled case, by and through her attorney of record, and respectfully requests this Honorable Court for an Order approving the loan modification on the Debtor's residential real property with her current lender, BSI Financial Services. As for reasons, your Debtor states as follows:

1. This case was filed on 1/15/2016 and later confirmed on 04/01/2016. Your Debtor has paid a total of $20,256.00 to the Chapter 13 Trustee.

2. Your Debtor has been working with BSI Financial Services and after making trial loan modification payments, they will modify her existing mortgage loan subject to this Court's approval.

3. The terms of the new loan will be a new principal balance amount of $227,137.68 with an interest rate of 4.000% and a maturity date of 07/01/2058. The principal, interest, and escrow payment will total $1,095.21. (See attached loan modification agreement)

4. The automatic stay has terminated int his case pursuant to this Court's Order of June 29, 2016 and this loan modification agreement will allow your Debtor to keep her home.

5. After much discussion with Counsel, the Debtor understands and believes the terms of the modified loan will be in her best interest.

    WHEREFORE, PREMISES CONSIDERED, your Debtor respectfully requests this Honorable Court for an Order approving the loan modification with BSI Financial Services for reasons set forth hereinabove.

    /s/ Robert D. Reese
    Robert D. Reese, Attorney for Debtor
    Bond, Botes, Reese & Shinn, P.C.
    600 University Park Place, Suite 510
    Birmingham, AL 35209
    (205) 802-2200

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing pleading upon C. David Cottingham, Chapter 13 Trustee electronically via CM/ECF to dcottingham@ch13tuscaloosa.com, dcottingham13@ecf.epiqsystems.com and all creditors listed on the attached mailing matrix by U.S. Mail on this the 20th day of August, 2018.

    /s/ Robert D. Reese
    Attorney for Debtor

Loan No.:

# LOAN MODIFICATION AGREEMENT
# BANKRUPTCY DISCLOSURE ADDENDUM

THIS LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM is made this 3rd day of August, 2018 , and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date, given by the undersigned (the "Borrower") which modifies Borrower's Note and Security Instrument to U.S. Bank Trust National Association, as Trustee of Bungalow Series III Trust by its attorney-in-fact, BSI Financial Services

(the "Lender")

and covers the Property located at:

3723 Diamondhead Lane, Northport, Alabama 35473
*[Property Address]*

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Loan Modification Agreement by the bankruptcy court.**
2. Borrower will seek a discharge in a Chapter 13 bankruptcy proceeding **AFTER** the execution of Loan Modification Agreement;
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Loan Modification Agreement and this Loan Modification Agreement Bankruptcy Disclosure Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Loan Modification Agreement Bankruptcy Disclosure Addendum, the terms of the Loan Modification Agreement will remain unchanged and in full effect.

_____ -Borrower          _____ -Borrower
Cosetta Johnson

_____ -Borrower          _____ -Borrower

LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM          Page 1 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

Loan No.: 

U.S. Bank Trust National Association,
as Trustee of Bungalow Series III Trust —Lender
by its attorney-in-fact, BSI Financial
Services

_____ -Date

By: _____

Its: _____

LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM
CHAPTER 13 ACTIVE BANKRUPTCY

Page 2 of 2

**Source of Title**
Deed Book N/A
Page N/A
Instrument No. N/A

**After Recording Return To:**
BSI Financial Services
Attn: Recording Department
1425 Greenway Drive, Suite 400
Irving, Texas 75038

**This Document Prepared By:**
Ruth Ruhl, Esquire
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251

_____[Space Above This Line For Recording Data]_____
Loan No.:

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this      3rd      day of August, 2018      ,
between Cosetta Johnson, a single woman

("Borrower")
and U.S. Bank Trust National Association, as Trustee of Bungalow Series III Trust by its attorney-in-fact, BSI
Financial Services

("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
September 13th, 2007    , recorded September 17th, 2007, and recorded in Book/Liber 2007      , Page 97546      ,
Instrument No. N/A                  , of the          Records of Tuscaloosa         County, Alabama        ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
3723 Diamondhead Lane, Northport, Alabama 35473                                                          ,

"The original loan amount was $ 162,900.00 and the Unpaid Principal Balance is $227,137.68. The portion of
the Unpaid Principal Balance which is subject to mortgage registry tax is $227,137.68."

**Reason for Modification: MATURITY DATE EXTENSION**

Loan No.:

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of August 1st, 2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $227,137.68 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. $52,703.37 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $174,434.31. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.000%, from July 1st, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $729.02, beginning on the 1st day of August, 2018, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be July 1st, 2058.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

Loan No.:

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

(g) Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii)Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be

Loan No.:

applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to the sums secure by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

8. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying

Loan No.:

the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_____   _____(Seal)
Date                              Cosetta Johnson                 –Borrower

_____   _____(Seal)
Date                                                              –Borrower

_____   _____(Seal)
Date                                                              –Borrower

_____   _____(Seal)
Date                                                              –Borrower

## BORROWER ACKNOWLEDGMENT

State of    Alabama          §
                             §
County of   Tuscaloosa       §

I, _____ *[name and style of officer]*,
hereby certify that Cosetta Johnson

whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand this _____ day of _____, A.D.

(Seal)
                                    _____
                                    Notary Signature

                                    _____
                                    Style of Officer

ALABAMA LOAN MODIFICATION AGREEMENT                               Page 5 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.:

U.S. Bank Trust National Association, as Trustee
of Bungalow Series III Trust by its attorney-in-
fact, BSI Financial Services

_____ -Date

By: _____

Its: _____

## LENDER ACKNOWLEDGMENT

State of         §
                 §
County of        §

  I, , a Notary Public in and for said County in said State, hereby certify that                         whose name as                         of U.S. Bank Trust National Association, as Trustee of Bungalow Series III Trust by its attorney-in-fact, BSI Financial Services

is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said entity.
  Given under my hand this the         day of

(Seal)

_____
Notary Signature

Notary Public
Style of Officer

ACKNOWLEDGMENT (ALABAMA)      Page 6 of 6

Loan No.:

## NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____  -Borrower  
Cosetta Johnson

_____  -Borrower

_____  -Borrower

_____  -Borrower

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)  Page 1 of 1

Loan No.:

# CORRECTION AGREEMENT

**Borrower(s):** Cosetta Johnson

**Property:** 3723 Diamondhead Lane, Northport, Alabama 35473

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is Cosetta Johnson.

"Lender" is U.S. Bank Trust National Association, as Trustee of Bungalow Series III Trust by its attorney-in-fact, BSI Financial Services
, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $227,137.68 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree and covenant in order to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

Case 16-70058-JHH13    Doc 34    Filed 08/20/18    Entered 08/20/18 13:56:46    Desc Main
Document    Page 11 of 13

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

**I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.**

| | |
|---|---|
| Cosetta Johnson   -Borrower (Date) | -Borrower (Date) |

| | |
|---|---|
| -Borrower (Date) | -Borrower (Date) |

**CORRECTION AGREEMENT**  Page 2 of 2

Loan No.:

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:                                              BORROWER:

N/A Modification
_____ (Date)        _____ (Date)
                                      Cosetta Johnson

N/A Modification
_____ (Date)        _____ (Date)

_____ (Date)        _____ (Date)

_____ (Date)        _____ (Date)

**ATTORNEY SELECTION NOTICE -MULTISTATE**                           Page 1 of 1